IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STUART E. RAGAN, | ) CIVIL NO. 10-00187 JMS/BMK |
| ) | |
| Plaintiff, | ) ORDER GRANTING DEFENDANT |
| ) JP MORGAN CHASE BANK, N.A.'S | |
| vs. | ) MOTION FOR SUMMARY |
| ) JUDGMENT ON COUNT II OF THE | |
| FINANCE AMERICA, LLC; JP | ) FIRST AMENDED COMPLAINT |
| MORGAN CHASE BANK, N.A., | ) |
| JOHN DOES 1-10, JANE DOES 1-10, | ) |
| DOE PARTNERSHIPS 1-10, DOE | ) |
| CORPORATIONS 1-10, AND DOE | ) |
| ENTITIES 1-10 | ) |
| ) | |
| Defendants. | ) |
| _____ ) | |

## ORDER GRANTING DEFENDANT JP MORGAN CHASE BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT ON COUNT II OF THE FIRST AMENDED COMPLAINT

### I. INTRODUCTION

After a first round of summary judgment motions, remaining in this action is a single state-law claim asserted by Plaintiff Stuart E. Ragan ("Plaintiff") against Defendant JPMorgan Chase Bank, N.A. ("Chase" or "Defendant"), the servicer for Plaintiff's mortgage on real property located at 2709 Puu Hoolai Street, Kihei, Hawaii 96753 (the "subject property"). Plaintiff asserts that Defendant improperly purchased year-long insurance policies for the subject property and refused to revoke and/or prorate them after Plaintiff requested to

make full insurance payments through his own insurer.

Currently before the court is Defendant's Motion for Summary Judgment, in which Defendant argues that there is no genuine issue of material fact supporting that it improperly charged Plaintiff insurance. Based on the following, the court agrees and GRANTS Defendant's Motion for Summary Judgment.

## II. **BACKGROUND**

**A.     Factual Background**

On March 1, 2004, Plaintiff jointly purchased the subject property with Richard Michael Anholt ("Anholt") through a mortgage agreement with Finance America, LLC as lender. Doc. No. 34-3,[1] Chase Ex. A, Request for Admissions Nos. 1-4; Doc. No. 34-5, Chase Ex. C. Anholt subsequently conveyed his interest in the subject property to Plaintiff. Doc. No. 34-3, Request for Admissions No. 10. Despite the fact that Anholt had signed the mortgage and promissory note jointly with Plaintiff, Plaintiff did not give notice to either Finance America or any servicer of the mortgage that this transfer had occurred. *Id.* at Nos. 7-8, 11-12.

On June 3, 2004, Chase, through its servicing arm, Chase Home

---

[1] Because Defendant cites to not only the evidence presented in support of this Motion, but also the previous Motion for Summary Judgment, the court cites directly to the Document Numbers.

2

Finance LLC, became the servicer of the mortgage. Doc. No. 34-1, Declaration of Thomas E. Reardon ("Reardon Decl.") ¶¶ 3-4. The mortgage allows Chase to purchase insurance if the borrowers (Plaintiff and/or Anholt) do not provide proof of the required insurance coverage. *Id.* ¶ 6; Doc. No. 34-5, Chase Ex. C ¶ 5. Specifically, the mortgage provides:

> If Borrower fails to maintain any of the [required insurance coverage], Lender may obtain insurance coverage, at Lender's option and Borrower's expense. . . . Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.

Doc. No. 34-5, Chase Ex. C ¶ 5.

Chase purchased insurance for the subject property on a few different occasions. In 2005, Chase notified Anholt that he had failed to provide proof of insurance, and explained that if Anholt failed to provide proof of insurance, Chase "will obtain insurance for you. This policy will remain in place until you are able to provide us with coverage." Doc. No. 34-6, Chase Ex. D. Chase ultimately took out an insurance policy on the subject property and made a payment on July 5, 2005 for $3,264, and on September 7, 2005 for $4,914. Doc. No. 34-6, Chase Ex. D; Doc. No. 66-3, Chase Ex. A, Interrogatory No. 7. Proof of insurance was subsequently provided and Chase cancelled its insurance coverage on May 11,

3

2006.  Doc. No. 34-7, Chase Ex. E.  Plaintiff was again charged insurance in 2008, when Chase made a payment on January 10, 2008 for $147.30, and on April 22, 2008 for $532.  Doc. No. 66-3, Chase Ex. A, Interrogatory No. 7.  In February 2009, Plaintiff stopped making mortgage payments, which again resulted in Defendant purchasing insurance for the property with an annual premium of $3,842.  *Id.*; Doc. No. 34-8, Chase Ex. F.

**B.    Procedural Background**

Plaintiff filed a Complaint against Chase on March 30, 2010, and a First Amended Complaint ("FAC") against Chase and Finance America on August 31, 2010.  The FAC alleged that Finance America violated RESPA because it never provided Plaintiff a copy of the mortgage agreement or notification of changes and transfers of the note on the subject property.  FAC ¶ 11.  Count II alleged that Chase violated RESPA because it never provided Plaintiff "notifications of changes and transfers of said note on the above referenced property."  FAC ¶ 14.  Count II further alleged that Chase "would preempt my right to buy insurance on [the subject property] by setting up an escrow account and charged me over six thousand dollars ($6,000.00) a year for insurance," which ruined Plaintiff financially and results in the mortgage being unconscionable.  FAC ¶¶ 15, 18-19.

4

On November 30, 2010, the court granted in part and denied in part Chase's Motion for Summary Judgment, resulting in Plaintiff's RESPA claim against Finance America, and Plaintiff's state law claim against Chase, remaining. Doc. No. 56. On December 21, 2010, the court dismissed Finance America from this action. Doc. No. 60.

On April 1, 2011, Chase filed its Motion for Summary Judgment. Plaintiff filed an Opposition on May 24, 2011, and Chase filed a Reply on May 27, 2011. A hearing was held on June 13, 2011.

### III. **STANDARD OF REVIEW**

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine

issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn

in his favor." (citations omitted)).

## IV. **DISCUSSION**

This is now Chase's second Motion for Summary Judgment. Chase originally argued that summary judgment should be granted on Plaintiff's state law claim because the mortgage provides that Chase could purchase insurance if Plaintiff failed to obtain insurance coverage. The court denied Chase's Motion for Summary Judgment because although the mortgage allows Chase to purchase insurance, Plaintiff appeared to assert that he was injured by Chase purchasing year-long insurance policies, thereby preventing Plaintiff from obtaining his own, more affordable, insurance on the subject property. *See Ragan v. Finance Am., LLC*, 2010 WL 4961487, at *5 (D. Haw. Nov. 30, 2010); *see also* FAC ¶¶ 15-17. The FAC further asserts that Chase's exorbitant charges ruined Plaintiff financially and that the mortgage is unconscionable. FAC ¶¶ 18-19. Chase's first Motion did not raise, and the court did not address, this assertion. Chase now argues that summary judgment should be granted because, among other reasons,[2] Chase only

---

[2] Chase also argues that the court lacks diversity jurisdiction because only Plaintiff's state law claim remains and the amount in controversy is less than $75,000. The court disagrees. "[D]iversity jurisdiction is determined at the time the action commences, and a federal court is not divested of jurisdiction . . . if the amount in controversy subsequently drops below the minimum jurisdictional level." *Hill v. Blind Indus. & Servs. of Md.*, 179 F.3d 754, 757 (9th Cir. 1999) (citations omitted). In both his Complaint and FAC, Plaintiff seeks not only damages for the "unconscionable and usurious rate of insurance," but also rescission of the mortgage contract
(continued...)

purchased insurance when necessary and at no time prevented Plaintiff from providing his own insurance. The court agrees that summary judgment should be granted.

As to Plaintiff's assertions that the mortgage terms are unconscionable, in general, "unconscionability" is a defense to the enforcement of a contract, and is not a proper claim for affirmative relief. *See, e.g.*, *Gaitan v. Mortg. Elec. Registration Sys.*, 2009 WL 3244729, at *13 (C.D. Cal. Oct. 5, 2009) ("Unconscionability may be raised as a defense in a contract claim, or as a legal argument in support of some other claim, but it does not constitute a claim on its own."); *Carey v. Lincoln Loan Co.*, 125 P.3d 814, 829 (Or. App. 2005) ("[U]nconscionability is not a basis for a separate claim for relief."); *see also Barnard v. Home Depot U.S.A., Inc.*, 2006 WL 3063430, at *3 n.3 (W.D. Tex. Oct. 27, 2006) (citing numerous cases for the proposition that neither the common law or the UCC allows affirmative relief for unconscionability).³ Plaintiff clarifies,

---

²(...continued)
and punitive damages. Given that the mortgage was for $409,600, the court finds that the amount in controversy is met. Doc. No. 45-3, Chase Ex. C.

³ In *Skaggs v. HSBC Bank USA, N.A.*, 2010 WL 5390127, at *3 n.2 (D. Haw. Dec. 22, 2010), this court noted in dicta that "at least one Hawaii court has addressed unconscionability when raised as a claim seeking rescission." (citing *Thompson v. AIG Haw. Ins. Co.*, 111 Haw. 413, 142 P.3d 277 (2006)). The court did not mean to suggest that an affirmative claim for "unconscionability" without more is a proper cause of action. Even in *Thompson*, the operative complaint did not assert a separate *count* for rescission or unconscionability. *See Thompson*, 111
(continued...)

however, that he asserts that the insurance charges are unconscionable because the mortgage was an adhesion contract where Plaintiff could not negotiate its terms, the insurance provision was hidden within the document, and the insurance terms are one-sided.

To the extent Hawaii courts would recognize such claim, there are no facts supporting it. Specifically, under Hawaii law, an "adhesive" contract is one that is "drafted or otherwise proffered by the stronger of the contracting parties on a 'take it or leave it' basis." *Brown v. KFC Nat'l Mgmt. Co.*, 921 P.2d 146, 167 (Haw. 1996). An adhesive contract is unenforceable if "(1) the contract is the result of coercive bargaining between parties of unequal bargaining strength; *and* (2) the contract unfairly limits the obligations and liabilities of, or otherwise unfairly advantages, the stronger party." *Id*. There is no evidence that Finance America had stronger bargaining strength -- for example, because it was the only available mortgagee or because other circumstances regarding the consummation of the transaction strongly favored it. *See, e.g.*, *Rodrigues v. Newport Lending Corp.*, 2010 WL 4960065, at *4 (D. Haw. Nov. 29, 2010) (dismissing adhesive contract claim because "Plaintiffs do not argue that they had no other choice of

---

[3](...continued)
Haw. at 417, 142 P.3d at 281 (indicating the specific counts were for negligence, fraud, breach of duty, and unfair and deceptive trade practices under HRS § 480-2). In *Thompson*, the remedy of rescission was based on an independent claim.

9

lenders, that they were pressured to sign the agreement without reading it, or that the terms agreed to were unconscionable"); *Branco v. Norwest Bank Minn., N.A.*, 381 F. Supp. 2d 1274, 1281 (D. Haw. 2005) (finding that the plaintiffs "were not 'oppressed' or left without any meaningful choice in the matter: they could have refused Defendants' terms and chosen to transact business with a different lender"). Further, there is no evidence that the insurance provision unfairly advantages Chase. The mortgage clearly explains that Plaintiff must maintain insurance on the subject property or Chase would obtain insurance at Plaintiff's expense. Doc. No. 34-5, Chase Ex. C ¶ 5. In other words, this clause only became an issue if and when Plaintiff failed to provide proof of insurance; Plaintiff was ultimately in control of whether Chase would ever need to insure the subject property.[4] Thus, these mortgage terms and facts do not support any claim that the mortgage is unenforceable.

Nor are there any facts supporting Plaintiff's assertions that Chase improperly preempted Plaintiff's right to obtain his own insurance. The mortgage expressly provides that Chase may purchase insurance if Plaintiff failed to provide proof of insurance, and also notifies Plaintiff that "insurance coverage so obtained

---

[4] Further, Plaintiff was given notice that he needed to provide insurance coverage to avoid Chase purchasing insurance on his behalf. *See* Doc. No. 69-3, Pl.'s Ex. 3 (providing notice that Chase would obtain insurance on the subject property with annual premium of $3,264 if Anholt failed to provide proof of insurance within thirty days).

might significantly exceed the cost of insurance that Borrower could have obtained." Doc. No. 34-5, Chase Ex. C ¶ 5. Prior to Plaintiff's default on the mortgage, Chase purchased insurance in 2005 and cancelled it in 2006 upon proof of insurance. The next time Chase purchased insurance was in 2008, for a total cost of less than $1,000 (contrary to Plaintiff's assertions that Chase locked Plaintiff into year-long insurance policies in both 2007 and 2008 with an annual premium of $6,000, *see* Doc. No. 34-4, Chase Ex. B, Interrogatory No. 1). In other words, there is no evidence supporting Plaintiff's allegation that Chase "would preempt [Plaintiff's] right to buy insurance on the [subject property] by setting up an escrow account and charged [Plaintiff] over six thousand dollars ($6,000.00) a year for insurance." *See* FAC ¶ 15. Nor is there any evidence supporting that Chase at any time refused to cancel insurance upon proof that Plaintiff had obtained his own insurance. In sum, Plaintiff's state-law claim against Chase lacks merit.

In opposition, Plaintiff comes forward with no evidence explaining the circumstances of the loan consummation or supporting his assertion that Chase preempted him from purchasing his own insurance.[5] Although Plaintiff submitted

---

[5] The court considered not only what Plaintiff submitted in opposition to this Motion for Summary Judgment, but also his submissions regarding the earlier Motions for Summary Judgment. Although Plaintiff submitted a declaration in support of his original Motion for
(continued...)

exhibits purporting to establish his annual insurance premiums on the subject property, Plaintiff submitted no affidavit or declaration authenticating them and the court therefore need not consider them on summary judgment.[6] *See Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532-33 (9th Cir. 2011) (citing *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002)). Further, even if the court did take the exhibits at face value, they do not establish any facts that support Plaintiff's allegations -- the documents do not suggest that Chase ever took out

---

[5](...continued)
Summary Judgment, Doc. No. 47-1, it does not comply with Federal Rule of Civil Procedure 56(c)(4), requiring that it "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated," or 28 U.S.C. § 1746 that he declare "under penalty of perjury under the laws of the United States of America that the foregoing is true and correct."

[6] Plaintiff's failure to authenticate these documents is not the first time Plaintiff has failed to follow the rules of this court. Plaintiff did not produce in discovery any of the documents attached to his Concise Statement of Facts, despite the fact that they are clearly responsive to Chase's document requests. *See* Doc. No. 34-9, Chase Ex. G. This discovery abuse provides the court an alternative basis to disregard these exhibits. Further, Plaintiff filed his Opposition one day late, and failed to follow Local Rule 56.1(b), requiring Plaintiff to admit or dispute "the facts set forth in the moving party's concise statement." At the hearing, Plaintiff asserted that he did not violate the Local Rules because they do not require him to admit or dispute the facts set forth by Chase. Plaintiff is mistaken -- Plaintiff relies on an earlier version of the Local Rules. The current Local Rules, effective December 1, 2009, clearly require Plaintiff to admit or dispute Chase's facts. *See* Local Rule 56.1(b).

Although Plaintiff is appearing pro se, Plaintiff has been an active member of the Hawaii State Bar Association (license number 6571) since 1995, and is representing other litigants in this district in five separate foreclosure-related lawsuits. The court will no longer overlook Plaintiff's flagrant disregard for the rules of this court. *See, e.g.*, *Ragan v. Finance Am., LLC*, 2010 WL 4961487, at *6 (D. Haw. Nov. 30, 2010) (reprimanding Plaintiff for filing a motion for summary judgment that was "spurious and a waste of the court's and the parties' time). Plaintiff is put on notice that failure to follow the rules of this court in this action or any other action he is appearing as counsel may result in sanctions.

insurance even when Plaintiff had provided notice of coverage or that Chase refused to cancel coverage when Plaintiff provided proof of coverage. Rather, the documents confirm that Plaintiff was told that any policy purchased by Chase would be cancelled upon proof of other insurance.[7] Doc. No. 69-3, Pl.'s Ex. 3, Doc. No. 59-6, Pl.'s Ex. 6.

The court therefore GRANTS Chase's Motion for Summary Judgment.

## V. CONCLUSION

Based upon the above, the court GRANTS Chase's Motion for Summary Judgment. The Clerk of Court is directed to close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 14, 2011.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Ragan v. Finance Am., LLC et al.*, Civil No. 10-00187 JMS-BMK, Order Granting Defendant JPMorgan Chase Bank, N.A.'s Motion for Summary Judgment on Count II of the First Amended Complaint

---

[7] Plaintiff further asserts that his exhibits establish that he has been charged a total of $22,000 for insurance for the past five years. *See* Pl.'s Opp'n at 5-6. The court disagrees -- Plaintiff submitted documents outlining notices of his annual premiums, but as explained above, Chase cancelled the policies upon proof of insurance such that the statements of annual premiums do not establish how much Plaintiff was ultimately charged. Plaintiff presented no evidence of how much he paid for insurance and/or was charged by Chase, as could be shown by evidence of his payment history.

13